We have one case on the motions calendar to be argued, Darboe v. Barr, and so we'll begin with that. And counsel, please identify yourselves before you start. And with respect to the day calendar, I'll let the lawyers know when they have a minute left of their time. Darboe v. Barr. May it please the court, my name is Alina Doss and I represent Petitioner Usman Darboe. Could you, this is Jed Seck, could you help me with a little bit with the mechanics of it? If supposing we were to deny what you're seeking here, we just deny it, what mechanically, what happens next with respect to your client? I mean, is he, is he, does he then, is he then transported to Africa or what happens? Yes, Your Honor, and I did want to note that I would like to reserve a minute of my time for rebuttal, but I understand that's not necessarily the procedure for a motions argument. But I would like to make that request.  You can have a minute for rebuttal. Thank you. To answer your question, Your Honor, if this court denies the stay motion, which first it has a choice to do because it's our position that nothing has triggered an exception to the forbearance policy. But if it adjudicates the stay motion and denies it, yes, Mr. Darboe would have the ability to be deported as soon as ICE is able to facilitate that deportation. We do know that they have been deporting individuals to various countries at a lower rate than they usually do given the circumstances. So it would be a question of practicalities and not legalities. That's right, Your Honor. Only the court's forbearance policy is, is allowing Mr. Darboe to stay. That's what, ah, good. Thank you. And, and so in terms of the relief that we're seeking here today, Mr. Darboe is a husband and father to U.S. citizens who's confined by ICE in a county jail where at least 37 people, including four jail nurses, have contracted COVID-19. Under these circumstances, we think there are at least two extraordinary and unique factors that demonstrate why this court should grant Mr. Darboe's emergency motion to be released from detention and why this court, if it does choose to adjudicate the stay motion rather than apply the forbearance policy, should grant him a stay of removal. First, Mr. Darboe is one of only 13 individuals this year who has received a full and unconditional pardon from Governor Andrew Cuomo, erasing the sole conviction that has served as a primary basis of this court's denial of his applications for relief from deportation. Do we know, do we know why he got the pardon? Is there any indication in the record of the governor's reasoning or wouldn't be in the public record? Yes, Your Honor. As we note, both in the materials that were submitted as part of the adjudication of the advance request, as well as the emergency bail application, the governor's office did release a statement to the press that we cite in this article that notes that it recognized that it grants pardons in the interest of redemption and rehabilitation. That's certainly supported by the evidence, Mr. Darboe has a single criminal conviction after which he became a husband and a father. He completed reentry programs, he completed his GED, and it's based on that and his extraordinary ties to the community, which was incredibly supportive of his application, that he was granted a pardon. And that pardon does erase the sole conviction that serves as the basis of the immigration court's denials of his release. In fact, it affects the analysis of this case in at least six different ways. On the other hand, as the immigration judge noted, there were repeated arrests. I mean, there were dispositions, I guess in part because of his age, but there were repeated robberies and then they were resolved. Yes, Your Honor, there were four incidents that led to dispositions, two youthful offenses, as well as disorderly conduct and his criminal conviction. And those two youthful offenses did involve theft offenses, and those were considered by the immigration judge. What was inappropriate was that the immigration judge also considered several arrests that equated with misconduct, which under this court's precedent in Padmore v. Holder and a number of other cases cited on pages 14, 15 of the bail motion is improper. And it's improper under the BIA's own precedent as well. And those are errors that occurred even before the pardon was issued. The pardon certainly changes the calculus because with a pardon under the BIA's own case law, in matter of K, matter of H, and federal regulation 22 CFR 40.21A5, he is no longer inadmissible and therefore does not need a waiver of inadmissibility at all in order to adjust the status. He's also statutorily eligible for voluntary departure at minimum. And the pardon changes the discretionary calculation for all of his forms of relief. And it's because of the strong legal claims that the government itself has consented to hold Mr. Darbar's petition in abeyance while the BIA reviews his motion to open, to reopen his case. Which brings us to the second extraordinary factor. He. By the way, you got a minute left. Actually, you don't have any time left, but go ahead. Why don't you finish this part up? Thank you, Your Honor. The second extraordinary factor is obviously the length of time that he will remain detained in a facility where there's a COVID-19 outbreak as he pursues his balanced deportation challenge. As this court is aware, it can take months, if not years, for a motion to reopen to be adjudicated. I'm sorry. I'm going back to where I started. In other words, this motion to reopen could or would likely occur after he had been, while he was in Gambia, after he had been sent to Gambia. Is that right? Well, Your Honor, the motion has already been filed with this court. And this court ordered his petition to be held in abeyance so that the BIA could consider the motion. And then if it grants, obviously, Mr. Darbo would no longer have a final order of removal. If it denies, we would appeal and consolidate that petition with the current petition. And because the government has no return policy, they have no policy that guarantees that they would bring Mr. Darbo back, even if he did prevail. Legally, this demonstrates significant irreparable harm. The government did vote one sentence in their opposition to irreparable harm and therefore has conceded our argument that they don't guarantee his return, even if he prevailed on his motion. All right. Let's hear from the government. You'll have a minute for rebuttal. May it please the court, Nell Seymour on behalf of William Barr. The government's position in this case is that petitioner has failed to meet his legal burden to establish that his immediate release is warranted under the relevant legal standard. The government would like to note that the power to grant bail is a limited one, and it should be exercised in special cases only under a math and alchemy. And this is not such a case. It's also important to note that the historically correct forum petitioner's challenge is in district court. And as this court is well aware, petitioner did indeed file a habeas that was denied based on substantially similar claims. And he has recently had a bond hearing that was also denied where an immigration judge considered him a flight risk. And the government's position is that petitioner is getting the process that he is due redetermining whether or not he has continued detention is appropriate and that it is not that the Court of Appeals in this case should deny his request because he has failed to demonstrate both that his petition raises substantial claims and that extraordinary circumstances exist that would make the grant. Could you address the pardon? I mean, why doesn't the fact of the pardon change the analysis? The main reason why the party doesn't change the analysis, your honor, is because what is before the court is the petition as it existed on the record as it existed before the agency and the pardon is the subject of the motion to reopen, which is currently pending before the board and has nothing to do with this court's review. And I would like to hold on a second. I agree with you that the pardon may not be relevant to the original petition, but with respect to the stay motion, isn't the fact that there's a pardon relevant to whether we should grant a stay? The pardon, although it did happen after the agency rendered its decision, the stay motion is separate and apart from the motion to reopen. So we're we're the board to have the opportunity to consider the pardon in the first instance. Then the agency, the government, the government agreed to a stay of the briefing of the petition, which suggests that the pardon played a role in the government's agreeing to stay the briefing. And so if the government is willing to stay the briefing of the petition, why wouldn't the government agree to a stay of removal until until that can be decided? The government agreed to stay the petition so that the board could consider the effect of the pardon in the first instance, because it's our position that it is not that it is it should be decided by the agency, because the pardon, contrary to the argument, does not necessarily initiate the immigration consequences of the conviction, nor does it necessarily change the discretionary analysis that was performed. And for those reasons, it's more appropriate for the agency to have a chance to review the new material. Why shouldn't why shouldn't he be in? Why shouldn't he be in the country while they're doing that rather than than in Gambia without any mean necessary means of returning? I mean, while this is going on, why shouldn't he be within the United States? Even if even if in prison. Because of the final order of removal, Your Honor, there to there's nothing that guarantees a right to remain in the United States that although the state of motion is pending, it hasn't been adjudicated yet. And so if this court were to deny a grant to stay, then I would plan accordingly. But until then, the fact that a motion to reopen this pending does not give a petitioner the right or a guaranteed opportunity to remain in the United States. Well, yeah, the question is whether it may not be a right or a guarantee. The question is whether we have the legal power to do it under the circumstances, irrespective of whether he is, quote, entitled to quote to it. The court does have the power to grant the same motion. However, pursuant to the arguments that are made within the government response to the state petitioner has failed to meet his legal burden in that context as well as he didn't show a reasonable likelihood of success on the merit. And again, the government would say that there is no reversible error in the agency's denial of the discretionary waiver and that the his repeated encounters of law enforcement, his lengthy criminal history and the adverse credibility finding all outweigh the positive equities in his case. And for that reason, a stay would not be appropriate. But if we were to go ahead, I was just going to say, supposing we weighed them and our weight comes out, we disagree with you. I'm not saying we've done that at all, of course. But supposing we did that, then it would be appropriate for us to grant the stay. If we if everything you just said, we disagreed with in terms of of the merits of the of the petition, then it would be appropriate for us to grant the stay. The court does have the power to grant a stay. Yes, Your Honor. Yeah, OK. I'm sorry. That's all I ask. Yeah, no, no, that's OK. That's the difficulty of this kind of situation. Counsel, let me ask you a question. Even and this goes to the questions that you got about the pardon, even if he even if he were to get the motion to reopen, the fact that he has the pardon would would do away with the necessity of a waiver. It might do away with the necessity of a waiver, but you still have to you still have to petition for adjustment and adjustment status for his lawful permanent residency based on his marriage, right? That is correct, Your Honor. And to be clear, there's not connection. He doesn't have a right to it. And it's a discretionary exercise which will take into consideration his prior conduct, regardless of whether it's a conviction or not. Correct. Exactly, Your Honor. Yeah, I mean, I think that's the point you're trying to make. Is that the fact that he might have been pardoned doesn't necessarily guarantee him that he's going to get the adjustment status that he seeks through by by doing the reopening and ensuring that it's an adjustment of status as opposed to a waiver to the adjustment status, correct? Correct. It would be discretionary. And the fact that a pardon has been issued does not necessarily change discretionary analysis at the agency. And without the adjustment of status, he cannot remain in the United States. Is that correct? Correct. He's overstayed. I mean, he's long overstayed. You know, OK, I got it. All right. Thank you. We have your argument. Ms. Das, rebuttal. Thank you, Your Honor. On that last point, we would just note that the calculus for an adjustment of status application when a 212H waiver is not required is significantly lower in terms of the balancing of the equities. Instead of there being an extreme hardship bar that needs to be met, that's when it becomes a positive equity in his favor. So the court would not only be looking at the fact of his positive ties to the community and his lengthy residence, he overstayed his visa when he was seven years old. They would be considering the extreme hardship, the PTSD, and the homelessness that his wife and daughter experienced without him. Those would all be coming to the factors away against any concerns regarding his criminal record, and they would account for the pardon. In terms of this case, this case has an abeyance order that the government consented to, and that makes it significantly different from other cases. And there is precedent for this court to consider information that has come in through a motion to reopen before it has actually been appealed to the circuit, and to do so in the context of a bail motion. That case is Sukey Lee v. Kessler, 250 Fed APTX 414-2007, where a petitioner's case was held in abeyance pending a motion to reopen, after which time the petitioner sought release on bail. And the Second Circuit- With regard, counsel, let me ask you this. The stay calculation and the bail calculation are two different matters, are they not? Yes, Your Honor, they are. And so the stay calculation is premised upon both the pardon and or the motion reopened. But the bail calculation is premised upon the likelihood of his success and or his release, isn't it, ultimately? It's premised on whether there are extraordinary circumstances of which the pardon is certainly a part and has been placed into the record, both in the abeyance motion and the bail motion, as well as whether there are substantial claims. And the Sukey- So the pardon comes the exercise of discretion by the integration judge with regard to the bail determination? Yes, Your Honor, it comes into account in terms of the fact that Mr. Darbo will, you know, have a very strong case and on remand and or on reopening, and that he will remain in detention for a very long period of time if he is not released pending adjudication of this petition. And that's an extraordinary- How long would that be? I think from our experience, it often takes months, if not years, for a motion to reopen to be adjudicated. And the BIA is slower these days because of the pandemic. It also affects his ability to participate fully in his hearings on remand. Since attorney visitation is not permitted in jail, we are rarely allowed confidential legal calls to prepare our clients for hearings. So it really- release is necessary to make relief effective in this case. And the Su Kyung Lee case did involve a motion for release on bail because the court- If we were to grant your application for bail, you want him released in his own recognizance, or is he willing to post some financial security? He would be willing to post financial security. The government offers in footnote six of its opposition that if he is ordered release, they would ask that he be released on appropriate supervision, which the parties could work out afterwards. The ICE has been ordered to release dozens of individuals over the last few weeks on reasonable conditions, and they know how to do it. And the parties have been able to work it out. Given the fact that you- this is not district court, where do you work that out if you don't work it out? Back here? No, your honor. I think that would be something to- there are other processes involved when ICE and petitioners disagree about conditions of supervision. And we would certainly be willing to accept an order of supervision. And a final point is that the immigration judge who has denied bond in the past based on flight risk has done that because he has a final order of removal. They are responsible for following the Board of Immigration Appeals. It's the end of the inquiry for them. This court sits in a different position. The BIA decision is the beginning of the inquiry. And if the court does see that there are substantial claims that there's legal error and that the case is likely to be remanded or reopened, it can consider that back in ordering his release and allow him to pursue his claim to the safety of the citizen. Okay. Thank you. Sorry. Thank you. We have your argument. The court will reserve decision.